1

```
 1            IN THE UNITED STATES COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
 2
   UNITED STATES OF AMERICA,    )
 3                              )
                  Plaintiff     )
 4                              )
          vs                    )   1:23-CR-00114
 5                              )
   JOSHUA HALL,                 )
 6                              )
                  Defendant     )
 7   _____)

 8

 9     TRANSCRIPT OF PROCEEDINGS - REVOCATION OF SUPERVISED RELEASE
         BEFORE THE HONORABLE CHRISTOPHER C. CONNER
                  MONDAY, FEBRUARY 5, 2024
10                HARRISBURG, PENNSYLVANIA

11
   FOR THE GOVERNMENT:
12
       SCOTT R. FORD, ESQ.
13     Sylvia Rambo United States Courthouse
       1501 North 6th Street, 2nd Floor
14     P.O. Box 202
       Harrisburg, PA 17102
15

16 FOR THE DEFENDANT:

17     ALEXANDRIA LAPPAS, ESQ.
       Federal Public Defender's Office
18     100 Chestnut Street
       Third Floor
19     Harrisburg, PA 17101

20

21

22 Proceedings recorded by machine shorthand, transcript produced
   by computer-aided transcription.
23 _____

24           SUZANNE A HALKO, RMR, CRR
             CERTIFIED REALTIME REPORTER
25            235 N. WASHINGTON AVENUE
           SCRANTON, PENNSYLVANIA 18503
```

2

1          THE COURT:  Good morning, Mr. Hall.

2          MR. HALL:  Good morning, Your Honor.

3          THE COURT:  Mr. Hall, before we can proceed, I have

4   to establish for the record that you fully and completely

5   understand admitting to any of the conduct that is charged in

6   your revocation petition and give a little bit of background,

7   but before I do that, I want to have your sworn in.

8          Please understand that after the oath is

9   administered, I will ask certain questions of you, and you are

10  advised that if you give me any false answers, you could be

11  subject to further prosecution for perjury or making false

12  statements to a judicial officer.

13          Do you understand that, sir?

14          MR. HALL:  Yes, I do, Your Honor.

15          THE COURT:  And if you don't understand any of my

16  questions, please interrupt me.  I'm happy to repeat or

17  rephrase any question.  Therefore, if you respond to one of my

18  questions, I will operate with the understanding that you have

19  both heard and understood the question posed.

20          Do you understand that instruction?

21          MR. HALL:  Yes, Your Honor.

22          THE Court:  If at any point in time at today's

23  proceeding, you would like to speak privately with your

24  attorney, Ms. Lappas, let me know and I will be happy to do

25  that.  Okay?

3

1          MR. HALL:  Absolutely.

2          THE COURT:  Please administer the oath.

3   JOSHUA HALL, CALLED AS A WITNESS, HAVING BEEN DULY SWORN OR

4   AFFIRMED ACCORDING TO LAW, TESTIFIED AS FOLLOWS:

5          THE COURT:  Mr. Hall, your full name, please, for the

6   record.

7          MR. HALL:  It's Joshua Alan Hall.

8          THE COURT:  And you can read, write, and converse in

9   the English language?

10          MR. HALL:  Yes, Your Honor.

11          THE COURT:  How old are you, sir?

12          MR. HALL:  24 years old, almost 25.

13          THE COURT:  What is your educational background?

14          MR. HALL:  I completed high school, but nothing

15   further other than that.

16          THE COURT:  Have you had any drugs or alcohol today?

17          MR. HALL:  No, Your Honor.

18          THE COURT:  Are you currently taking any prescription

19   medicine?

20          MR. HALL:  Yes, I am.

21          THE COURT:  What are you taking, sir?

22          MR. HALL:  I take Lamotrigine, 100 milligrams, I

23   believe it is, for bipolar disorder, I take Escitalopram or

24   Lexapro, 20 milligrams, and I take Metoprolol, 25 milligrams,

25   for high blood pressure.

4

1          THE COURT:  Does any of that medication have any

2    effect on your thinking, your understanding, or your

3    judgment -- an adverse effect on your thinking, understanding,

4    or your judgment?

5          MR. HALL:  No, Your Honor.

6          THE COURT:  Are you feeling all right today under the

7    circumstances?

8          MR. HALL:  Under the circumstances, yeah.  A little

9    depressed, but feeling as good as I can.

10         THE COURT:  The Court finds that the Defendant's

11   ingestion of prescription medicine has not impaired his present

12   thinking, understanding, or his judgment.

13         Now, Mr. Hall, I am going to review basically the

14   provisions set forth in the petition for revocation of your

15   term of supervised release.

16         Have you received a copy of this petition?

17         MR. HALL:  Yes, I have, Your Honor.

18         THE COURT:  Have you had a chance to review it with

19   Ms. Lappas?

20         MR. HALL:  Yes, I have.

21         THE COURT:  The petition basically contains two

22   separate violations.  The first is that you will not commit

23   another federal, state, or local crime, and also that you will

24   permit the U.S. Probation Office to install and monitor any

25   activity on your computer that has to do with the United States

1 Probation Office's computer monitoring policy.

2          The probation officer was contacted by a special

3 agent of the United States Capitol Police regarding a Twitter

4 video that had been posted by you, and in that video it is

5 alleged that you indirectly threatened Congressional

6 Representative Eric Swalwell, and he was the victim of the

7 online threats that resulted in your underlying offense.

8          You had executed a computer monitoring filtering

9 participant agreement which required you to report all online

10 accounts and provide user names and passwords and the

11 information regarding a Twitter account where your allegedly

12 threatening statements were made, and there was also an

13 indication that you provided the address for your substance

14 abuse treatment facility in lieu of your residence address.

15 That's all part of that first violation.

16          The second violation is that you were accepted in a

17 treatment center in Shippensburg.  However, it is alleged that

18 you left that facility on two separate occasions against

19 medical advice; on January 6th, 2024, you agreed to return on

20 January 11th, and you were readmitted to the Blueprints for

21 Addiction Recovery, and then again on January 22, the probation

22 officer was notified that you again left the facility against

23 medical advice.

24          Are you familiar with these charged violations?

25          MR. HALL:  Yes, I am, Your Honor.

1          THE COURT:  You have the right to a revocation
2    hearing on these violations.  The purpose of the hearing would
3    be to determine whether you did, in fact, commit one or more of
4    the violations of the conditions of your supervised release as
5    set forth in the petition.
6          The United States would be required to disclose the
7    evidence against you and would bear the burden of proving by a
8    preponderance of the evidence that you committed the alleged
9    violations.
10          You would have the right to the assistance of counsel
11    and afforded the opportunity to present evidence and to
12    question any adverse witnesses.  You may waive your right to a
13    revocation hearing if you do not contest one or more of the
14    charged violations of the conditions of your supervised
15    release.
16          If you waive your right to the hearing, and you admit
17    to one or more of the charged violations, I would then proceed
18    to determine what an appropriate resolution would be.
19          I want you to be aware -- and I will have counsel
20    confirm -- that we have two separate grade offenses, a Grade B
21    and Grade C offense violations; the false statements, and the
22    remaining violations would be the Grade C violation.  The Grade
23    B violations carry a guideline range of 6 to 12 months.  The
24    Grade C violations carry a guideline range of 4 to 10 months.
25          Counsel, would you confirm the accuracy of my

7

1  statements regarding the guidelines ranges and the various
2  violations?

3          MR. HALL:  Yes, Your Honor, those are accurate.

4          MS. LAPPAS:  Yes, Your Honor.

5          THE COURT:  Very well.

6          Mr. Hall, do you understand your rights to a
7  revocation hearing?

8          MR. HALL:  Yes, I do, Your Honor.

9          THE COURT:  Have you had a chance to consult with Ms.
10  Lappas about whether or not you wish to proceed with a
11  revocation hearing, admit to one or more of the violations?

12          Ms. Lappas, do you want to essentially summarize what
13  it is your client wishes to do under the circumstances?

14          MS. LAPPAS:  Yes, Your Honor.

15          Mr. Hall wishes to waive his right to a revocation
16  hearing.  He is admitting to the Grade C via monitoring
17  agreement and leaving treatment.

18          THE COURT:  Very good.

19          Is that accurate, Mr. Hall?

20          MR. HALL:  Yes, it is, Your Honor.

21          THE COURT:  You understand that you are facing a
22  guideline range of 4 to 10 months on those charged violations?

23          MR. HALL:  Yes, I do.

24          THE COURT:  Mr. Ford, what is the Government's
25  position with respect to what the Defendant wishes to do under

8

1 the circumstances?

2      MR. FORD:  Your Honor, we will not be proceeding with

3 the Grade B violations in lieu of the admission of the Grade C.

4      THE COURT:  Very good.

5      The Court finds that the Defendant is fully alert,

6 competent, and capable of making a knowing and voluntary waiver

7 of the right to a revocation hearing, and the Court accepts

8 that waiver.

9      Based upon Mr. Hall's admissions to the Grade C

10 violations, we accept those admissions and find by a

11 preponderance of the evidence that he has committed those

12 violations and will proceed now to the disposition of these

13 admitted violations.

14      Ms. Lappas, I'm happy to hear from you with respect

15 to what you believe to be an appropriate resolution of this

16 matter.

17      MS. LAPPAS:  Thank you, Your Honor.

18      It seems apparent for the petition for violations,

19 the disposition for and the PSR from the underlying criminal

20 conviction, that Mr. Hall has long struggled with severe

21 alcoholism, and in recognition that often treatment problems

22 require treatment solutions, we are asking Your Honor to

23 fashion a resolution that will get Mr. Hall back into treatment

24 as quickly as possible.

25      At the initial appearance, I had originally put

1  forward Mr. Hall's father as a potential third-party custodian

2  in front of Magisterial District Judge Bloom with the idea that

3  we would get him quickly into an inpatient facility, not that

4  we would release him forever, but that we would release him

5  into a treatment facility, and in preparation for this hearing,

6  my office arranged for Mr. Hall to have a drug and alcohol

7  evaluation at Cumberland County Prison, but the soonest they

8  could schedule that is for this coming Friday, and so I don't

9  have that before Your Honor, but looking at Mr. Hall's

10 treatment, there is no -- or his history, there is no doubt

11 that he is in desperate need for treatment.

12        His long history of alcohol dependence seems to be

13 related to the conduct for violations.  It seems that Mr. Hall,

14 like I'm sure other folks, has a connection between -- an

15 unhealthy connection between alcohol use and social media use,

16 and the two seem to fuel each other in a toxic way.

17        I know Mr. Hall has a statement that he's going to

18 read to the Court that addresses this as well, but what Mr.

19 Hall needs is alcohol treatment, and he has the benefit of

20 coming from a family that has not enabled his alcoholism.  His

21 father, who is here in court supporting him, was, I believe,

22 his third-party custodian when Mr. Hall was on pretrial

23 release, and called and reported to probation when Mr. Hall was

24 using drugs and alcohol.

25        When he agreed to testify as a candidate for a

**10**

1  third-party custodian, he made clear to the Court that the only

2  way he would accept Josh back into his home is if there was a

3  firm rule that Josh was not to touch one drop of alcohol,

4  because although he's only 24 years old, Mr. Hall has an

5  extensive history of alcoholism that has shaped his present and

6  could shape his future if he's not given the treatment that he

7  needs.

8        It's true that looking at his history also shows

9  anything but unblemished success in treatment.  He has been in

10  treatment many times.  Of course, one of the violations here

11  today that he's admitted to is leaving treatment against

12  medical advice.  Although he did complete Roxbury, he did leave

13  Blueprints against medical advice, and he did so and became

14  intoxicated, drank again.

15        But the health-care field has long recognized that

16  drug addiction is a brain disease that affects behavior, and

17  that these types of cognitive and behavioral effects can have

18  harmful consequences long after someone has stopped using the

19  drug or alcohol of their choice.

20        So, for all of those reasons, Your Honor, we are

21  asking the Court to either continue Mr. Hall on supervised

22  release, extend his period of supervised release, or fashion a

23  sentence that would allow him to be transferred directly from

24  Cumberland County Prison, where he is now, into a treatment

25  facility.

1          THE COURT:  Okay.  Thank you, Ms. Lappas.

2          Mr. Hall, your attorney has apparently already

3 advised you of this, but I need to advise you directly that you

4 have a right of allocution.  It gives you the opportunity to

5 address the Court and to add to anything that she has presented

6 on your behalf.

7          You are not required to say anything, if you do not

8 care to, but now would be the appropriate time.  You have my

9 attention, and if you have written something that you would

10 like to read, you may do that as well.  The choice is up to

11 you.

12          MR. HALL:  Absolutely I would, Your Honor.  I did

13 prepare a statement for you that I would like to read.  I

14 prepared this over the last couple of days.

15          Your Honor, I thank you for allowing these

16 circumstances.  The reason I filed with the FEC to run for

17 congress is I want to use my experiences to make positive

18 change for the people of our country.  Dozens of my friends in

19 treatment encouraged me to do so, with one such friend

20 volunteering to run my campaign.  I was under the impression I

21 was freely allowed to use the internet so long as it involves a

22 legitimate use and is being monitored by the probation office.

23 It was simply using the platform of "X" or Twitter to advocate

24 for what I believe in and spread the message about my campaign.

25 I intended no nefarious act or wrongdoing.

1    In regards to treatment, I believe I made a mistake

2  in leaving treatment impulsively.  The first time I left

3  Blueprints to see my grandmother, who is currently battling

4  stage 4 terminal cancer, and I did drink a few of the nights,

5  while the second time, admittedly, I acted on a whim to go

6  drink at a hotel with a friend.

7    Prior to these slipups, I completed Roxbury's

8  inpatient substance abuse program after 45 days and had been at

9  Blueprints for roughly 40 days.  I have been engaging in my

10  recovery during this time, making lots of friends and

11  connections, and attending nightly AA and NA meetings which I

12  enjoyed and found helpful.

13    I now realize that I should have never left

14  treatment.  I let my impulsive decision-making and disease of

15  alcoholism get the best of me.  I have struggled with manic

16  depression, also known as bipolar disorder, since I was a

17  teenager.  I believe this is what eventually led to my alcohol

18  abuse.  It has impacted my life and my family's lives through

19  my sometimes impulsive, irrational actions gravely over the

20  years, and for that I'm deeply sorry to my father and the rest

21  of my family.

22    I take responsibility for my actions and I never

23  meant to hurt anyone in my life and know I have a good heart

24  and the potential to succeed.

25    I'm sorry to you, to Officer Herzog, and my family

13

1   that I violated my terms of release by leaving treatment

2   without permission.  I was not thinking ahead about potential

3   consequences and have been kept in 23-hour solitary confinement

4   since being incarcerated on January 23rd at Cumberland County

5   Prison and have yet to see a psych doctor despite numerous

6   requests to do so.  This has had a tremendous impact on my

7   mental health and well-being, and I would love nothing more

8   than to get back into treatment and get back on track.

9           I'm scheduled for a drug and alcohol evaluation with

10  the deputy warden of treatment at CCP for this Friday per the

11  request of my attorney, Ms. Lappas, and per the DNA eval

12  results and recommendation, the next steps could include

13  reentrance into drug and alcohol treatment with Your Honor's

14  permission.

15          So I'm respectfully requesting that you adopt my

16  attorney's recommendation of treatment, as I'm truly sorry for

17  violating the terms of my release, and I know that I will do

18  the right thing and with whatever it takes going forward if

19  given the chance.

20          I'm humbly asking and begging for your mercy and to

21  put my continued rehabilitation over retribution.  Thank you

22  for allowing me to speak, Your Honor.

23          THE COURT:  Thank you, Mr. Hall.

24          THE WITNESS:  Thank you.

25          THE COURT:  Mr. Ford.

1        MR. FORD:  Your Honor, the Government is requesting a

2   guideline sentence, followed by drug and alcohol treatment.

3   It's clear, and we agree with Ms. Lappas, the Defendant's

4   issues here are related to the alcohol use, potential drug use,

5   and mental health problems.

6        The issue is this, though, Mr. Herzog, Officer

7   Herzog, has done everything that he can to assist this

8   Defendant, and three separate times he left treatment, and

9   then, while using alcohol, he made the posts on Twitter or "X"

10  with respect to Representative Swalwell.  Again, I understand

11  these are vague, but as I look at them, I have to believe that

12  there was some intent to at least be threatening with regard to

13  these statements.  Again, this is the exact criminal conduct

14  that occurred before.

15       If we just released him now and released him into

16  treatment, as defense is requesting, then we are just going to

17  be right back here again whenever he leaves that treatment

18  program.  So, for that reason, we're asking for a guideline

19  sentence.

20       It's our hope that while incarcerated, he can stay on

21  his medications, he can begin to get some of that treatment

22  while in prison, and then be released to a treatment facility.

23       THE COURT:  Thank you, Mr. Ford.

24       I have spent a fair amount of time reviewing the

25  materials in this case and several things have jumped out at

1  me.  One, there seems to be a great focus on alcoholism, and

2  there is no doubt that that is truly a disease that Mr. Hall is

3  afflicted with, but I also see very clear indications of mental

4  health issues and mental illness that may be driving the

5  alcoholism.

6        Let's start with the underlying conviction, which

7  included not just wire fraud, but making interstate

8  communications with a threat to injure.  So we have that as our

9  underlying condition.

10        Then we have essentially what is a mess of actions

11  related to supervised release.  Mr. Hall strikes me as someone

12  who has been essentially incorrigible based upon mental health

13  issues, alcoholism issues, and immaturity in decision-making.

14        The numerous times where people have tried to help

15  Mr. Hall, and he has made poor and irrational decisions,

16  indicates to me that he simply needs to be placed in custody

17  for a period of time in order to provide adequate community

18  protection and deterrence.

19        On January 23rd, according to the Deputy United

20  States Marshal who arrested him, Mr. Hall was highly

21  intoxicated when he was apprehended.  He didn't provide any

22  information regarding the Twitter account.  I don't believe

23  that was an oversight on his part.  I think that was

24  intentional and that his use of social media was in direct and

25  obstinate violation of the terms and conditions of his

1  supervised release.

2          I know he has a history of manic depression and

3  bipolar disorder.  I know he has history of alcoholism.  He has

4  been given many opportunities to be treated and helped, and he

5  has not taken advantage of those activities.  The decision to

6  run for congressional office has nothing to do with my

7  assessment of this particular case.  That is certainly Mr.

8  Hall's right, and he may pursue that at any given time to the

9  extent that he qualifies for whatever office he runs for.

10          My main concern is community protection and

11  deterrence, and I don't believe I can do that without a

12  sentence at the upper end of the guideline range.

13          So, Mr. Hall, if you would please stand?  The Court

14  finds that the Defendant, Joshua Hall, has violated the

15  conditions of supervised release and, therefore, revokes the

16  Defendant's terms of supervision.

17          Further, the Court has determined that a sentence

18  within the guideline range is appropriate in order to provide

19  adequate community protection and deterrence.

20          Pursuant to the Sentencing Reform Act of 1984, and

21  after having considered the factors listed in Title 18 of the

22  United States Code, Section 3553, it is the judgment of the

23  Court that the Defendant is hereby committed to the custody of

24  the Bureau of Prisons to be imprisoned for a term of 10 months

25  on each count to be served concurrently to each other.

1        It is further ordered that the Defendant shall pay

2   the $175.00 balance of the special assessment and the $5,770.33

3   restitution amount to the Clerk of the U.S. District Court.

4        During the term of imprisonment, the fine is payable

5   every three months in an amount, after a telephone allowance,

6   equal to 50 percent of the funds deposited into the Defendant's

7   inmate trust fund account.

8        Upon release from imprisonment, the Defendant shall

9   be placed on supervised release for a term of two years on each

10  count.  Within 72 hours of release, the Defendant shall report

11  in person to the probation office in the district to which he

12  is released.

13       While on supervised release, he must not commit

14  another federal, state, or local crime, and must not possess a

15  dangerous weapon.  He must comply with the standard conditions

16  that have been adopted by this Court and the following

17  additional conditions:

18       One; you must participate in a substance abuse

19  treatment program and follow the rules and regulations of that

20  program.  The probation officer will supervise your

21  participation in the program, which could include an evaluation

22  and completion of any recommended treatment.

23       Two; you must submit to substance abuse testing to

24  determine if you have used a prohibited substance.  You must

25  not attempt to obstruct or tamper with the testing methods.

1          Three; you must not use or possess alcohol.

2          Four; you must not knowingly purchase, possess,

3  distribute, administer, or otherwise use any psychoactive

4  substances that impair a person's physical or mental

5  functioning, whether or not intended for human consumption,

6  except with a prior approval of the probation officer.

7          Five; you must participate in a mental health

8  treatment program and follow the rules and regulations of that

9  program.  The probation officer, in consultation with the

10  treatment provider, will supervise your participation in the

11  program, which could include an evaluation and completion of

12  any recommended treatment.  You must take all mental health

13  medications that are prescribed by your treating physician.

14          Six; you must submit your person, property, house,

15  residence, vehicle, papers, computers, other electronic

16  communications or data storage devices or media or office, to a

17  search conducted by a United States probation officer.  Failure

18  to submit to a search may be grounds for revocation of release.

19          You must warn any other occupants that the premises

20  may be subject to searches pursuant to this condition only when

21  reasonable suspicion exists that you have violated a condition

22  of supervision and that the areas to be searched contain

23  evidence of this violation.  Any search must be conducted at a

24  reasonable time and in a reasonable manner.

25          Seven; you must allow the probation officer to

**19**

install computer monitoring software on any computer you use.

Eight; to ensure compliance with the computer monitoring condition, you must allow the probation officer to conduct initial and periodic unannounced searches of any computers subject to computer monitoring.  The searches shall be for purposes of determining whether the computer contains any prohibited data prior to installation of the monitoring software, to determine whether the monitoring software is functioning effectively after installation, and to determine whether there have been attempts to circumvent the monitoring software after installation.  You must warn any other people who use these computers that the computers may be subject to searches pursuant to this condition.

Nine; while on an approved device which is monitored by a U.S. probation officer, your use of the internet is limited to legitimate and necessary reasons, such as employment, education, online shopping, and websites conveying essential information, such as news, traffic, and weather, or other websites approved in advance by the probation officer.

Ten; you must pay the balance of the restitution imposed in minimum monthly installments of $50.

Mr. Hall, I must advise you of your right to appeal your sentence to the United States Court of Appeals.

With few exceptions, any notice of appeal must be filed within 14 days.  If you are unable to pay the costs of an

20

1  appeal, then you may apply for leave to appeal in forma

2  pauperis and, if approved, counsel will be appointed for you

3  and you will not be required to pay any costs.

4          If you so request, the Clerk of Court will prepare

5  and file a notice of appeal on your behalf.

6          It goes without saying that based on the history of

7  this case and the history of the conduct, all of those computer

8  monitoring conditions are absolutely essential to the period of

9  supervision, and those are additional reasons for the

10  imposition of those conditions.

11          Mr. Ford, anything further?

12          MR. FORD:  No, Your Honor.

13          THE COURT:  Ms. Lappas, does your client have a

14  location where he would like to be housed?

15          MS. LAPPAS:  He does not have a location request,

16  Your Honor.

17          MR. HALL:  Can I actually make a location request to

18  be held at Cumberland County?

19          MS. LAPPAS:  Your Honor, I have seen that on

20  judgments before.  I don't know whether the Bureau of Prisons

21  would do that, but I have seen judges do that on the imposition

22  of sentences before, and having seen a history of Cumberland

23  County, I know that they have more drug treatment resources

24  than at least some of our other local county prisons, including

25  access to programs which may benefit Mr. Hall.

1          THE COURT:  I'm actually not going to impose that as

2   a recommendation.  I think the federal facilities may have

3   better drug and alcohol treatment available for Mr. Hall, and

4   so I'm disinclined to grant that request.

5          I think it would be better for Mr. Hall to be in a

6   federal facility, not to take anything away from Cumberland

7   County, but I think in terms of the seriousness of Mr. Hall's

8   conduct and difficulties, that a federal facility may be better

9   suited for him.  So under those circumstances, we will decline

10  that request.

11          Anything further, Ms. Lappas?

12          MS. LAPPAS:  No, Your Honor.

13          THE COURT:  Mr. Ford?

14          MR. FORD:  No, Your Honor.

15          THE COURT:  Thank you very much.  We are adjourned.

16      (At this time, the proceedings in the above-captioned

17  matter adjourned.)

18

19

20

21

22

23

24

25

22

# C E R T I F I C A T E

     I, SUZANNE A. HALKO, Official Court Reporter for the United States District Court for the Middle District of Pennsylvania, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of the within-mentioned proceedings had in the above-mentioned and numbered cause on the date or dates hereinbefore set forth; and I do further certify that the foregoing transcript has been prepared by me or under my supervision.

                  <u>/s/Suzanne A. Halko, RMR,CRR</u>
                  SUZANNE A. HALKO, RMR,CRR
                  Official Court Reporter

REPORTED BY:

    SUZANNE A. HALKO, RMR,CRR
    Official Court Reporter
    United States District Court
    Middle District of Pennsylvania
    Scranton, Pennsylvania  18501

       (The foregoing certificate of this transcript does not apply to any reproduction of the same by any means unless under the direct control and/or supervision of the certifying reporter.)